UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Lundstrom and
Cori Lundstrom,

    Plaintiffs,

v.

Maguire Tank, Inc.,

    Defendant.

Civil No. 05-952 (DWF/AJB)

**AMENDED MEMORANDUM
OPINION AND ORDER**

---

Adam P. Rutzick, Esq., Rutzick Law Office and Steven R. Rutzick, Esq., Steven R. Rutzick & Associates, counsel for Plaintiffs.

Michael D. Carr, Esq., Paul E. D. Darsow, Esq., Anton J. van der Merwe, Esq., and Blake W. Duerre, Esq., Arthur Chapman Kettering Smetak & Pikala, PA, counsel for Defendant.

---

On December 28, 2006, the Court docketed an Order granting Defendant's Motion for Summary Judgment. *See* Doc. No. 60. That Order failed to include the name of one of Defendant's attorneys. Therefore, the Court now vacates the Order contained in Doc. No. 60 and enters the following Amended Order, which is exactly the same as Doc. No. 60 except that it also includes the name of an additional attorney for Defendant.

**Introduction**

Plaintiff John Lundstrom ("Lundstrom"), an employee of Truck Crane Service Company ("Truck Crane"), was injured at a work site that was supervised by Maguire Tank, Inc. ("Maguire"). After electing to receive workers' compensation benefits from Truck Crane, Lundstrom brought a negligence action against Maguire. This case is

before the Court pursuant to Maguire's Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

## Background

In September 2003, Maguire was constructing a water tower in Tama, Iowa. Maguire, who served as the general contractor for the project, contracted to lease a crane, along with employees to serve as an operator and oiler, from Truck Crane. Lundstrom served as the oiler and Mark Tollefson, another Truck Crane employee, served as the operator for the project. As the oiler, Lundstrom assisted the operator in setting up the crane, securing loads, and providing directions.

As the general contractor, Maguire was responsible for coordinating the activities of everyone on the work site to assure that work proceeded in the proper order and that all persons working on the site observed safe practices. Randy Smith, an employee of Maguire, served as the foreman for the project. Lundstrom agreed in his deposition that it was Smith's responsibility to supervise everyone on the jobsite. Additionally, Tollefson testified that "at the time that [he was] on this project" he was "in essence . . . being leased to Maguire to do their work[.]" (Aff. of Pls.' Counsel ("Pls.' Aff."), ¶ 6, Ex. 4, Deposition of Mark Tollefson ("Tollefson Dep.") at 58.) Further, Tollefson agreed that, "from the time [Truck Crane employees] get to the site to the time that [they're] off the site, [they're] there to provide Maguire a service." (*Id.* at 64.) Tollefson also testified that as long as Truck Crane employees were on the job site, Smith or other Maguire personnel had the authority to ask those employees to move Truck Crane's semi-tractors

to a different location. Moreover, Smith testified that he supervised the Truck Crane employees "until they left the job." (Pls.' Aff., ¶ 4, Ex. 2, Deposition of Randy Smith ("Smith Dep.") at 84–85.)

On Tuesday, September 9, 2003, Lundstrom and Tollefson completed Truck Crane's work on the project and prepared to leave the work site. While they were preparing to leave, Smith directed Maguire's employees to begin removing lifting lugs[1] from the backside of the water tower, away from the area that the crane and its crew were working. After Lundstrom and Tollefson loaded Truck Crane's equipment, Smith signed paperwork verifying that Truck Crane's work was finished. Lundstrom then asked Smith for permission to get water from the Maguire water cooler. As Lundstrom was walking underneath the water tower, a worker cut off a lifting lug above Lundstrom. The lifting lug fell 140 feet below and struck Lundstrom on the arm, causing injuries.

After the accident, Lundstrom elected to receive workers' compensation benefits from Truck Crane for his injuries. Lundstrom then brought this lawsuit for damages against Maguire, claiming that Maguire's negligence caused his injuries. Additionally, Lundstrom's wife, Plaintiff Cori Lundstrom, brought a claim for loss of consortium. Maguire now moves the Court for summary judgment, alleging that Lundstrom's damages are limited to those available under the Workers' Compensation Act. In particular, Maguire contends Lundstrom's damages are limited because: (1) Truck Crane

---

[1]   A "lifting lug" is a protruding bolt-like object that can be attached to cables or
(Footnote Continued on Next Page)

and Maguire were engaged in a "common enterprise"; and (2) Truck Crane's employees were Maguire's "loaned servants."

## Discussion

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts

---

(Footnote Continued From Previous Page)
ropes in order to lift equipment from the ground.

showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Loaned-Servant Doctrine

The Minnesota Workers' Compensation Act provides, in relevant part, that an employer's liability to pay workers' compensation benefits "is exclusive and in the place of any other liability." Minn. Stat. § 176.031 (2006). Therefore, "an injured employee who has elected to collect workers' compensation benefits is precluded from suing his or her employer in tort." *Minnesota Brewing Co. v. Egan & Sons Co.*, 574 N.W.2d 54, 63 n.11 (Minn. 1998). Maguire contends that, as a matter of law, Lundstrom was Maguire's loaned servant when he was injured and that he is therefore barred from bringing this negligence action.

The loaned servant doctrine provides that "if an employer lends an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the person to whom his services have been lent." *Newland v. Overland Express, Inc.*, 295 N.W.2d 615, 618 (Minn. 1980) (citing *Danek v. Meldrum Mfg. and Eng'g Co.*, 252 N.W.2d 255 (Minn. 1977). Although the worker remains the employee of the person who lent him, the worker "may also be the employee of the person to whom he is lent (the special employer)." *Id.* "The special employer becomes liable for workers' compensation and therefore immune from tort suit only if the following three conditions are satisfied: (1) the employee has made a contract for hire, express or implied, with the special employer; (2) the work being done is

essentially that of the special employer; and (3) the special employer has the right to control the details of the work."[2] *Id.* (citing *Danek*, 252 N.W.2d at 258.) The Court finds that each condition is satisfied.

First, the Court finds that, as a matter of law, Lundstrom made an implied contract for hire with Maguire. Here, Lundstrom's deposition testimony demonstrates that he made an implied contract to work for Maguire:

> Q. When you show up at a job site, if Maguire tells you this is the way they want things done, do you do it their way?
>
> A. If it's a safe procedure.
>
> Q. Yeah, I mean, assuming they are not asking you to do something dangerous.
>
> A. There's a common sense factor. Yes, you are under the direction of a superintendent or a supervisor on the job as to what they want to erect or put together with the crane.
>
> Q. They set the plan?
>
> A. Sure.
>
> Q. And then they tell you what the plan is and, basically, what they want accomplished?
>
> A. Sure. . . .

---

[2] In this case, whether Lundstrom was a loaned servant is a question of law for the Court. *See Nepstad v. Lambert*, 50 N.W.2d 614, 619 (1951) (holding that although the determination of whether an employee is a loaned servant is "normally one of fact for the jury, it is well established that where there is no dispute as to controlling facts and no jury would be entitled to find that there was not a loaned-servant relationship, the question becomes one of law for the court.").

>   Q. Would Maguire, then have supervised everyone on the job site, is that their responsibility?
>
>   A. Yes . . . [Randy Smith] pretty much took care of everybody down there.

(Aff. of Blake Duerre ("Duerre Aff."), Ex. A, Deposition of John Lundstrom ("Lundstrom Dep.") at 54–55.) Additionally, Tollefson testified that Truck Crane leased him to Maguire:

>   Q. And was your understanding that at the time that you were on this project that in essence you were being leased to Maguire to do their work?
>
>   A. Yes.

(Tollefson Dep. at 58.) Further, Randy Smith testified that "[t]hey [Truck Crane employees] were there to do a job for Maguire Iron through me." (Smith Dep. at 84.)

Based on this undisputed evidence, the Court concludes that Maguire has sustained its burden "to prove that there was consent to the alleged special employment relationship." *Newland*, 295 N.W.2d at 618. Here, Lundstrom consented to being under Maguire's control. *See Smieja v. City of Browerville*, 406 N.W.2d 325, 327 (Minn. Ct. App. 1987) (finding an implied contract based on the employee's acceptance of the special employer's control and direction). The Court rejects Lundstrom's assertion that this condition has not been satisfied because Lundstrom never signed a written contract to work directly for Maguire. Lundstrom did not have to sign a written contract in order to make a contract for hire; rather, the contract, as in this case, may be implied. *See Newland*, 295 N.W.2d at 618 (citing *Danek*, 252 N.W.2d at 258). Thus, Maguire has

satisfied the first condition.

Next, the Court finds that, as a matter of law, the work being done was essentially that of Maguire. Lundstrom does not argue that the work being done was that of anyone other than Maguire. Rather, Lundstrom asserts that he was not doing any work at the time of the accident because Truck Crane had finished its part of the project and was preparing to leave the work site. The Court rejects Lundstrom's argument and finds that Truck Crane's service continued for the duration of the time that Truck Crane's employees were on the work site. In particular, Tollefson agreed that, "from the time [Truck Crane employees] get to the site to the time that [they're] off the site, [they're] there to provide Maguire a service." (Tollefson Dep. at 64.) Thus, even after loading up the crane, Truck Crane employees were subject to Maguire's control. Specifically, Smith testified that he supervised the Truck Crane employees "until they left the job." (Smith Dep. at 84–85.) Further, Lundstrom's request for permission from Smith to get water indicates that he was subject to Maguire's control. Based on this undisputed evidence, the Court finds that Maguire has satisfied the second condition.

Finally, the Court finds that, as a matter of law, Maguire had the right to control the details of the work. Maguire urges the Court to apply the "whose business test" and the "right of control or direction test" in determining whether Maguire has satisfied this condition. Under the "whose business test," the Court asks, "[a]t the time of the negligent act, which employer's business was being done or furthered." *Teska v. Potlatch Corp.*, 184 F. Supp. 2d 913, 927 (D. Minn. 2002) (quoting *Nepstad*, 50 N.W.2d at 620). Under

the "right of control or direction test," the "crucial question is whether employer had the right to control the particular act giving rise to the injury." *Id.* at 928 (quoting *Nepstad*, 50 N.W.2d at 621–22).

Applying the "whose business test," the Court finds that the Truck Crane employees' act of leaving the Maguire work site furthered both Maguire's and Truck Crane's interests because Maguire needed the crane to be disassembled and removed in order to complete its work, and Truck Crane needed to remove its crane in order to use it on other jobs. Because by doing his job, Lundstrom was necessarily furthering and doing the business of both employers, the Court finds that in this case the "pivotal test is the 'right of control' inquiry." *See Teska*, 184 F. Supp. 2d at 927. Applying the "right of control or direction test," the Court finds that Maguire had the right to control the particular act giving rise to the injury. It is undisputed that Smith was in control of everyone on the job site—whether they were Maguire's employees or Truck Crane's employees—for as long as they were on the job site.

Specifically, Tollefson testified that as long as Truck Crane employees were on the job site, Smith or other Maguire personnel had the authority to ask those employees to move Truck Crane's semi-tractors to a different location. Thus, the Court rejects Lundstrom's assertion that Maguire could not have been controlling the details of the work when he was injured because he was not performing any work when the incident occurred. As a matter of law, Maguire had the right to control Lundstrom when his injury

9

occurred.[3]  Thus, Maguire has satisfied the third condition.

Viewing the undisputed facts in the light most favorable to Lundstrom, the Court concludes that, as a matter of law, no reasonable jury could find that Lundstrom was not Maguire's loaned servant.  Under the loaned-servant doctrine, Lundstrom became Maguire's employee.  Thus, Lundstrom's exclusive remedy is workers' compensation.  Accordingly, the Court grants summary judgment in favor of Maguire on Lundstrom's negligence claim.  Based on the Court's application of the loaned-servant defense, the Court need not reach whether the common-enterprise defense applies.

## Conclusion

Accordingly, **IT IS HEREBY ORDERED THAT:**

---

[3]  Maguire also relies on the language found on the back of Truck Crane's employees' time logs, which provided in relevant part, "Lessee [Maguire] agrees that the equipment and all persons operating such equipment, including operators and other personnel on the TCS [Truck Crane] payroll, are the Agents of Lessee and are under Lessee's exclusive jurisdiction, supervision and control . . . ."  (Buerre Aff., Exs. B and C.)  But Lundstrom contends that these logs were not signed by Maguire and the Truck Crane employees until after Lundstrom was injured and were therefore not in effect when Lundstrom was injured.  Maguire responds that this language was in effect because Maguire and Truck Crane had relied on this language during previous projects.  Viewing the evidence in the light most favorable to Lundstrom, the Court finds that the written language was not in effect when Lundstrom was injured.  But the Court need not rely on this written language in any event, given the undisputed deposition testimony in this case.

      1.      Maguire's Motion for Summary Judgment (Doc. No. 15) is **GRANTED**.

Dated:  January 2, 2007          s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            Judge of United States District Court